**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TRAN ENTERPRISES, LLC d/b/a | § | |
| NUTRITION DEPOT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. H-08-2748 |
| v. | § | |
| | § | |
| DHL EXPRESS (USA), INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Tran Enterprises LLC, doing business as Nutrition Depot, sued DHL Express, a package carrier hired by Nutrition Depot.  Nutrition Depot alleged that DHL failed to collect and remit $21,991.72 in collect-on-delivery (COD) payments for shipments DHL delivered to Nutrition Depot customers between April 3, 2006 and January 31, 2007.  In the Second Amended Complaint, filed after removal, Nutrition Depot asserted that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, applied; asserted Texas common-law claims for breach of fiduciary duty, breach of contract, and conversion; and asserted a claim under the Texas Theft Liability Act, TEX. CIV. PRAC. & REM. CODE § 134.001, *et seq*.  In addition to the $21,999.72 in actual damages, Nutrition Depot seeks between $75,375 and $80,775 in attorney's fees.

The following motions are pending:

- Nutrition Depot has moved for summary judgment on its state-law claims for breach of fiduciary duty, breach of contract, conversion, and theft of property.  (Docket Entry No. 19).  DHL has responded, (Docket Entry No. 20), and Nutrition Depot has

replied, seeking summary judgment that DHL is also liable under the Carmack
Amendment, (Docket Entry No. 21).

- DHL has also moved for summary judgment limiting Nutrition Depot's recovery to
a maximum of $100 per shipment under the parties' contract and the limitation of
liability provision in the Carmack Amendment, 49 U.S.C. § 14706(c)(1)(A).
(Docket Entry No. 20).  Nutrition Depot has responded, (Docket Entry No. 21), and
DHL has replied, (Docket Entry No. 25).

- DHL has filed a separate motion for a partial summary judgment that Nutrition
Depot is not entitled to attorney's fees.  (Docket Entry Nos. 23-24).  Nutrition depot
has responded.  (Docket Entry No. 26).

- Nutrition Depot has also asserted several objections to DHL's discovery responses,
(Docket Entry No. 19-2 at 8-11), to which DHL has responded, (Docket Entry No.
25 at 8).

- Finally, Nutrition Depot has moved to strike DHL's answer to the Second Amended
Complaint as untimely, (Docket Entry. No. 21-2 at 10-11), and DHL has responded,
(Docket Entry No. 25 at 10).

Based on a careful consideration of the motions, responses, and replies; the summary
judgment evidence; and the applicable law, this court denies Nutrition Depot's motion for summary
judgment and grants both of DHL's summary judgment motions.  Nutrition Depot's motion to strike
is denied and its discovery objections are overruled.  Under these rulings, DHL's liability is limited
to $100 per shipment and Nutrition Depot is not entitled to recover under its state-law claims or
obtain its attorney's fees.  The only remaining issue is whether DHL has paid Nutrition Depot the
$100 it owes for each of the disputed shipments.  Although this court has concluded that DHL's

liability is limited to $100 per shipment, the record does not permit this court to conclude that DHL has paid $100 for every shipment for which it allegedly failed to remit the COD funds to Nutrition Depot and wishes to resolve the claim.  A status conference is set for **December 15, 2009, at 8:30 a.m.** to discuss the resolution of this claim.

The reasons for these rulings are explained below.

## I.    The Summary Judgment Evidence

Much of the relevant evidence is undisputed.[1]  Between April 14, 2006 and April 17, 2007, Nutrition Depot, a Houston-based company, contracted with DHL to ship products to other states. (Docket Entry No. 24, Ex, 1, Edwards Aff., ¶ 3).  Waybills from 21 such shipments are part of the record.  Twenty of the shipments were by ground; one, to Honolulu, was sent by air.  (*Id.*, Ex. 1-A at 26).  All but one shipment was COD.  (*Id.* at 15).  There is also evidence of five or six additional COD shipments for which neither waybills nor waybill numbers are in the record.  (Docket Entry No. 19, Exs. 5, 6).  DHL charged Nutrition Depot a $7 fee for each COD shipment.  (Docket Entry No. 19, Ex. 8 at 4-5).

---

[1]   The summary judgment record includes: the October 21, 2009 affidavit of Dana Edwards, a DHL employee, (Docket Entry No. 24, Ex. 1);  the October 22, 2009 affidavit of Robert J. Taitz, an attorney employed by DHL, (Docket Entry No. 24, Ex. 2); the DHL Express Terms and Conditions of Carriage and Terms and Conditions of Service, (Docket Entry No. 19, Ex. 1); the DHL Worldwide Express Terms and Conditions, as they appeared to a shipper on DHL's website, including an explanation of the effect of clicking "I Accept," (Docket Entry No. 24, Ex. 1-B); the DHL Express COD Service Conditions, (Docket Entry Nos. 15, Ex. 1 at 9-10; 19, Ex. 1at 9-10; 24, Ex. 1-C); 21 contracts of carriage between DHL and Nutrition Depot, (Docket Entry No. 24, Ex. 1-A); three letters from DHL to Nutrition Depot from July, August, and September 2006 to settle COD disputes, (Docket Entry No. 19, Ex. 3); a March 28, 2008 demand letter from Nutrition Depot to DHL, (Docket Entry No. 19, Ex. 5); a May 15, 2008 demand letter from Nutrition Depot's attorney to DHL, (Docket Entry No. 19, Ex. 6); the Defendant's Response to Plaintiff's First Interrogatories, (Docket Entry No. 19, Ex. 7); the Defendant's Response to Plaintiff's First Request for Admissions, (Docket Entry No. 19, Ex. 8); the Defendant's Response to Plaintiffs First Request for Production, (Docket Entry No. 19, Ex. 9); the DHL Express Ground Tariff, (Docket Entry No. 19, Ex. 11); the September 10, 2009 affidavit of Lan Ngo, Nutrition Depot's attorney, (Docket Entry No. 19-5); Ngo's October 12, 2009 affidavit, (Docket Entry No. 21-5); and Ngo's November 2, 2009 affidavit, (Docket Entry No. 26, Ex. A).

3

Nutrition Depot alleges that it did not receive some of the COD checks for the shipments. In an interrogatory answer, DHL explained how it handles COD shipments:

> When a package is delivered, the driver enters a delivery scan into a hand held tracker, and also requests a signature from the recipient of the package. The date, time and recipient signature are then stored for a period of time in DHL's shipment database. This delivery information is stored under the waybill number for a particular shipment.

> With regard to the COD shipments, the delivery driver picks up the requested form of payment in the requested amount, and then brings that form of payment back to the local station. That local station then forwards the collected COD payment to the DHL COD department in Houston, Texas. The DHL COD department in Houston, Texas then forwards the C.O.D. payment back to the Shipper. This information is stored in the DHL COD database.

(*Id.*, Ex. 7 at 8). Neither the allegations nor the evidence reveals why Nutrition Depot did not receive the COD checks. Nutrition Depot alleges that DHL received the payments but did not remit the funds. DHL has denied the allegation.

**A.     The Parties' Contracts**

The parties agree that each shipment was governed by a contract of carriage that included the DHL Express Ground Waybill, DHL Express Terms and Conditions of Carriage, DHL Express Terms and Conditions of Service, DHL Express COD Service Conditions, and DHL Express Ground Tariff. (Docket Entry No. 15, Second Amended Complaint, Ex. 1; Docket Entry No. 24, Ex, 1, Edwards Aff., ¶ 5). Nutrition Depot generated waybills for each shipment online. In doing so, Nutrition Depot created a DHL online account, agreeing to the Terms and Conditions of Carriage and the Terms and Conditions of Service. (Docket Entry No. 24, Ex, 1, Edwards Aff., ¶ 8). Nutrition Depot attached the Terms and Conditions of Carriage, the Terms and Conditions of Service, and the COD Service Conditions to its original complaint and both amended complaints,

4

referring to it as "a valid and enforceable written contract," (Docket Entry No. 15, Ex. 1).  The COD

Service Conditions and the Ground Tariff were posted on the DHL website.  The parties agree that

the following provisions apply.

Under the parties' contract, the shipper is notified that unless it requests and pays an

additional amount for "Shipment Value Protection," DHL's liability is limited to $100 per shipment.

The Terms and Conditions of Carriage ("Terms and Conditions") contain the following provisions:

### IMPORTANT NOTICE

When ordering DHL's Services, you, as "Shipper", are agreeing, on
your behalf and on behalf of anyone else with an interest in the
Shipment, that the Terms and Conditions shall apply from the time
that DHL accepts the Shipment unless otherwise agreed in writing by
an authorized officer of DHL.  Your statutory rights and entitlements
under any defined service feature (for which additional payment has
been made) are not affected.

"Shipment" means all documents or parcels that travel under one
waybill . . . A "waybill" shall . . . incorporate these Terms and
Conditions. Every Shipment is transported on a limited liability basis
as provided herein.  If Shipper requires greater protection, then
Shipment Value Protection may be arranged at an additional cost.

### 6.  DHL's Liability

DHL's liability is strictly limited to direct loss only and to the per
kg./lb. limits in this Section 6.  If Shipper regards these limits as
insufficient it must make a special declaration of value and request
Shipment Value Protection as described in section 8 (Shipment Value
Protection) or make its own insurance arrangements.  All other types
of loss or damage are excluded . . . .DHL's liability in respect of any
one Shipment transported . . . is limited to its actual cash value and
shall not exceed the greater of:

$US 100; or

For certain International Shipments. . . approximately $US 20.00/kg.
or $US 9.07/lb. . . . ; or

$US 10.00/kg. or $US 4.54/lb. for Shipments transported by road (not applicable to the US).

**7. Claims**

Claims are limited to one claim per Shipment, settlement of which will be full and final settlement for all loss or damage in connection therewith.
. . .

**8. Shipment Value Protection**

If the Shipment has an actual value greater than the liability limits listed in Section 6, DHL can arrange shipment value protection for Shipper covering the actual cash value in respect of loss of or physical damage to the Shipment provided Shipper completes the Declared Value for Carriage section on the front of the waybill or requests it via DHL's automated systems and pays the applicable premium. . . .If Shipper does not declare a value for carriage and pay the appropriate charge, Shipper assumes all risks of loss or damage over the amount of DHL's liability as stated in Section 6.

(Docket Entry No. 19, Ex. 1 at 1-3).

Similarly, DHL's Terms and Conditions of Service ("Terms and Conditions") contain the following provisions:

**IMPORTANT NOTICE**

When ordering DHL's services you, as "Shipper", are agreeing, on your behalf and on behalf of anyone else with an interest in the Shipment, that the Terms and Conditions shall apply from the time that DHL accepts the Shipment unless otherwise agreed in writing by an authorized officer of DHL.

"Shipment" means all documents or parcels that travel under one waybill . . . A "waybill" . . . shall incorporate these Terms and Conditions.   Every Shipment shall be transported on a limited liability basis as provided herein.   If Shipper requires greater protection, then Shipment Value Protection may be arranged at an additional cost.  (Please see below for further information). . . .

> All Shipments are governed by DHL's Ground Tariff in effect as of the date of execution of this Ground Waybill, available at http://www.dhl-usa.com.

**5. DHL's Liability**

> Unless Shipper requests and pays for Shipment Value Protection, and makes a special declaration of value as described in Section 7 at the time of shipment, DHL's liability for loss or damage to any Shipment or any portion thereof is limited to the lesser of (i) $100.00 or (ii) the actual cash value of the article(s) lost or damaged.  In no event shall DHL be liable for special, incidental or consequential damages . . . .

**6. Claims**

> Claims are limited to one claim per Shipment, settlement of which will be full and final settlement for all loss or damage in connection therewith.

**7. Shipment Value Protection**

> If the Shipment has an actual value greater than the liability limits listed in Section 5, DHL can arrange Shipment Value Protection for Shipper covering the actual cash value with respect to loss of or physical damage to the Shipment . . . provided Shipper completes the Shipment Value Protection section on the front of the Ground Waybill or requests it via DHL's automated systems and pays the applicable excess value charge. . . . If Shipper does not request Shipment Value Protection and pay the appropriate charge, Shipper assumes all risks of loss or damage over the amount of DHL's liability as stated in Section 5.

(*Id.* at 4-6).

The COD Service Conditions contain the following language:

> All services provided by DHL Express are subject to DHL Terms and Conditions of Carriage and DHL Terms and Conditions of Service (Ground) as published at www.dhl-usa.com and as specifically detailed in the COD Service Conditions set forth below.

**Limits of Liability**

7

DHL's limit of liability is for the COD amount up to a maximum of $100 per shipment (unless Shipment Value Protection is marked).

DHL collects the consignee's check, made payable to the shipper. DHL's sole responsibility is to obtain the check (in the form and amount designated, if any) and to exercise due care and diligence in forwarding it to the shipper.

**Additional Service Conditions**

All COD shipments must be tendered on COD Waybill form 007 or automated means of tender.  No alteration of the waybill's terms or conditions is allowed. . . .

All transportation charges and COD service fees are paid by the shipper. . . .
. . . .

The declared value cannot exceed the COD amount and the limit of liability remains $100 unless additional shipment value protection is requested and the fee paid.  Any applicable excess valuation charges are billed to the shipper.

(*Id.* at 7-8).

The applicable DHL Ground Tariff states in relevant part as follows:

**DHL's Liability**

Unless the Shipper requests and pays for Shipment Value Protection, and makes a special declaration of value as described in Section 7 of the Ground Waybill at the time of Shipment, DHL's liability for loss or damage to any Shipment or any portion thereof is limited to the lesser of (i) $100.00 or (ii) the actual cash value of the article(s) lost or damaged. . . .

**Shipment Value Protection**

If the Shipper regards the above limits as insufficient, DHL can arrange Shipment Value Protection for the Shipper covering the actual cash value with respect to loss of or physical damage to the Shipment, subject to *Exclusions* below, provided the Shipper completes the Shipment Value Protection section on the front of the Ground Waybill or requests it via DHL's automated systems and pays the applicable excess value charge. . . .

(*Id.*, Ex. 11 at 5) (emphasis in original).

8

Dana Edwards, a DHL employee responsible for COD issues, explained that "Shipment Value Protection covered any problems that might arise in relation to the COD shipment, including the situation where the COD instrument is not collected at the time of the delivery of the package, or the situation where the COD instrument is collected at the time of the delivery of the package, but is not returned to the shipper."  (Docket Entry No. 24, Ex. 1, Edwards Aff., ¶ 7).

It is undisputed that Nutrition Depot did not fill out the Shipment Value Protection section of the waybills for the shipments at issue.  It is also undisputed that Nutrition Depot did not pay any additional amount to purchase Shipment Value Protection for any of the shipments at issue.

### B.    The Shipments at Issue

The record is unclear as to precisely what shipments are at issue and for what shipments DHL paid $100 to settle its liability under the limitation of liability provisions in the parties' contract.  In its briefing, DHL asserted that 21 shipments are in dispute and attached 21 waybills corresponding to those shipments. (Docket Entry No. 25 at 1).  The record shows that 20 of these 21 shipments were sent to Nutrition Depot customers COD.  (*Id.*).  The record also contains a demand letter dated March 28, 2008 sent by Nutrition Depot to DHL.  This letter demands that DHL remit the funds paid by Nutrition Depot's customers for nine shipments, two of which were not included in the 21 shipments that DHL identifies.  The record also contains a second demand letter dated May 15, 2008 from Nutrition Depot.  This letter demands that DHL remit the funds for 14 different shipments, either three or four of which were not among the 21 identified by DHL.  (*Id.*, Ex. 6).  Whether there are three or four shipments depends on whether one shipment listed in the second demand letter as having been sent COD is actually the same as the shipment for which the waybill in the record indicates that Nutrition Depot did not order COD.  DHL sought to discharge its liability by paying Nutrition Depot $100 per shipment for the COD shipments for which Nutrition

Depot alleged that DHL had received but not remitted the funds it collected on delivery.  The record

contains evidence that DHL's COD Department sent Nutrition Depot letters dated July 17, 2006,

August 10, 2006, and November 18, 2006 with $100 payments.  (Docket Entry No. 19, Ex. 3).  Each

of the letters stated:

> Attached is our check in the amount of $100.00 as full settlement of
> the enclosed captioned COD shipment.
>
> We realize our check is less than the original COD amount; however,
> in the absence of a higher declared value on the DHL airbill, our
> liability is limited to $100.00 per package.  Since your shipment had
> no declared value, we are limited to a settlement of $100.00 under
> our operating tariffs.
>
> Also attached is a copy of the letter we have sent to the receiver
> regarding this matter.
>
> We wish to apologize for any inconvenience caused.  We trust all
> future shipments will meet with your complete satisfaction.

(*Id.*).

Edwards searched DHL's records and determined that it sent 11 checks between August 10,

2006 and November 8, 2007, totaling $1,100.  (Docket Entry No. 24, Ex. 1, Edwards Aff., ¶ 12).

It is unclear whether these 11 checks were in addition to or overlapping with the three checks

referenced in the DHL settlement letters.  Nutrition Depot's second demand letter, sent by Nutrition

Depot's attorney to DHL on May 15, 2008, listed nine different settlement checks that Nutrition

Depot claimed it had received from DHL between July 19, 2006 and November 3, 2007, totaling

$1,400.  (Docket Entry No. 19, Ex. 6).  But, because either three or four shipments on the letter do

not correspond to waybills in the record, either $300 or $400 of that $1,400 is for shipments that

DHL did not include in its list of 20 disputed COD shipments.

The table below sets out the shipments that are referred to in the record, either in the 21

waybills that DHL provided or in the two demand letters Nutrition Depot sent to DHL.  (Docket

| Date | Waybill # | Recipient | How Sent | 3/28/08 Ltr. | 5/15/08 Ltr. | $100 check |
|---|---|---|---|---|---|---|
| 4/14/06 | 15768167553 | V Mobile San Jose | Ground | | X | 7/19/06 |
| 4/26/06 | 15924389154 | AA Mini Fabric* | Ground | X | | |
| 6/5/06 | 16455875450 | Mai Phuong Music | Ground | X | | |
| 6/12/06 | 16553847656 | Tan Sanh Ginseng & Herb | Ground | X | | |
| 6/13/06 | 16553910052 | Mai Phuong Music | Ground | | | |
| 8/7/06 | 17317905754 | AA Mini Fabric | Ground | | X | 9/20/06 |
| 9/1/06 | 17694149756 | Phuong Uyen Healthcare | Ground | | X | 10/12/06 |
| 10/16/06 | 18316474153 | Phuong Uyen Healthcare | Ground | X | | |
| 10/18/06 | 18357992553 | Xuong Hoa Lai | Air | X | | |
| 10/31/06 | 18546806154 | Mai Phuong Music | Ground | | X | 2/2/07 |
| 11/22/06 | 18882468356 | Mai Phuong Music | Ground | | X | 11/8/07 |
| 11/27/06 | 18913305353 | Dung Viet Music City | Ground | | X | 2/21/07 |
| 11/27/00 | 18934974656 | Mai Phuong Music | no waybill | X | | |
| 11/28/06 | 18934974656 | Mai Phuong Music | Ground | | | |
| 12/7/06 | 19095803753 | VietNam Plaza Supermarket | no waybill | X | | |
| 12/11/06 | 19134796951 | Mai Phuong Music | Ground | | X | 11/8/07 |
| 12/19/06 | 19309198554 | Vinh Xuan Video | Ground | | X | 11/8/07 |
| 1/18/07 | 19704324850 | Phuoc Loc Tho Oriental | Ground | X | | |
| 1/24/07 | 19791524351 | Duc Hung Video | Ground | X | | |
| 1/30/07 | 19876710254 | Mai Phuong Music | Ground | | X | 11/8/07 |
| 1/31/07 | 19900162354 | Hong Ngan Video and Music | Ground | | X | 11/8/07 |
| 4/17/07 | 21126418950 | Kim Anh Video & Fashion** | Ground | | | |
| Unknown | | Van Xuan Duong | no waybill | | X | 8/14/06 |
| Unknown | | Khai Hoan | no waybill | | X | 8/14/06 |
| Unknown | | Khai Hoan | no waybill | | X | 8/14/06 |
| Unknown | | Kim Anh Video & Fashion** | no waybill | | X | 5/30/07 |

Entry No. 24, Ex. 1-A; Docket Entry No. 19, Exs. 5, 6).  The first column shows the shipment date,

which is available for every shipment except those that appear only on the May 15, 2008 demand

letter.  The second column indicates the waybill number for each shipment that has a waybill.  The

shipments that are listed only in the second demand letter have no waybill.  The third column lists

the recipient of each shipment.  There is an asterix on the second entry, the April 26, 2006 shipment

to AA Mini Fabric, because the waybill does not show that this shipment was ever received.

(Docket Entry No. 24, Ex. 1-A at 10).  In her affidavit, Edwards stated that 20 of the 21 shipments reflected in the waybills were delivered successfully, and one was "not delivered by DHL and is therefore considered a lost shipment." (*Id.*, Ex. 1, Edwards Aff., ¶ 4).  The fourth column states how each package was delivered, if that information was available.  Of the 21 shipments for which there are waybills, only one shipment – to Hawaii – was not sent by ground.  (*Id.*, Ex. 1-A).  The next two columns show the shipments that are identified in Nutrition Depot's first demand letter, sent on March 28, 2008, and in the second demand letter sent on May 15, 2008.  The final column shows when DHL issued a $100 settlement check to satisfy its liability for 14 of the shipments.  It is unclear from the record whether any other checks besides those listed were issued.[2]

## C.   This Lawsuit and the Pending Motions

Nutrition Depot sued DHL in Texas state court on June 11, 2008.  The original petition asserted Texas common-law claims for breach of fiduciary duty, breach of contract, and conversion.  (Docket Entry No. 1, Ex. A).  DHL removed based on federal-question jurisdiction on September 10, 2008.  (*Id.*).  On October 28, 2008, Nutrition Depot filed a First Amended Complaint, which dropped the conversion cause of action.  (Docket Entry No. 6).  DHL answered on December 11, 2008, asserting a number of affirmative defenses.  (Docket Entry No. 10).  Nutrition Depot filed a Second Amended Complaint on June 24, 2009, which reasserted the conversion claim and added a fourth claim under the Texas Theft Liability Act and asserted that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, applied.  (Docket Entry No. 15).  Nutrition Depot

---

[2]   The two entries for shipments to Kim Anh Video & Fashion are marked because these could be the same shipment.  The waybill for the April 17, 2007 shipment to Kim Anh did not have any COD amount or fees.  (Docket Entry No. 24, Ex. 1-A at 15).  In her affidavit, Edwards stated that one of the 21 shipments DHL claims to be disputed  was not set up as a COD.  (*Id.*, Ex. 1, Edwards Aff., ¶ 3).  Of the shipments in the record, this is the only candidate.  On the second demand letter, Nutrition Depot demanded $1,406.00 for a shipment to Kim Anh, for which DHL had issued a $100 check on May 30, 2007.  (Docket Entry No. 19, Ex.6).  The date of this check could be consistent with an April 17, 2007 shipment.

claimed actual damages of $21,991.72, the same amount it had demanded in the second demand letter to DHL. (*Id.*)  DHL filed an amended answer on September 9, 2009, responding to the two new claims. (Docket Entry No. 18).

On September 10, 2009 Nutrition Depot moved for summary judgment, arguing that, DHL's liability limitations were void under the Carmack Amendment and that under the state-law claims, Nutrition Depot was entitled to recover the full amounts paid by its customers but not remitted by DHL, as well as its attorney's fees. (Docket Entry No. 19).  In the motion, Nutrition Depot objected to DHL's discovery responses as nonresponsive and as "provid[ing] no evidence." (Docket Entry No. 19-2 at 8-11).  Nutrition Depot also attached an affidavit from its attorney claiming $65,025.00 in attorney's fees. (Docket Entry No. 19-5).  DHL responded and moved for summary judgment that because Nutrition Depot had not check the box on the waybill marked "Shipment Value Protection" and had not declared a higher value for the shipment, Nutrition Depot's recovery is limited to $100 per shipment under the parties' contract.  DHL also argued that the Carmack Amendment preempted the state-law claims. (Docket Entry No. 20).

Nutrition Depot filed a brief on October 12, 2009 responding to DHL's motion and replying in support of own motion. (Docket Entry No. 21).  In this brief, Nutrition Depot moved to strike the Second Amended Answer as untimely.  On November 2, 2009, DHL filed a reply brief, in which it also responded to the motion to strike, the discovery objections, and the claim for attorney's fees. (Docket Entry No. 25).[3]  DHL moved for partial summary judgment that Nutrition Depot was not

---

[3] Nutrition Depot's motion to strike the Second Amended Answer is denied.  Nutrition Depot's motion for leave to amend was granted on August 20, 2009. (Docket Entry No. 17).  DHL answered twenty days later, on September 9, 2009. (Docket Entry No. 18).  This was longer than the period provided by the Federal Rules.  FED. R. CIV. P. 15(a)(3).  Motions to strike are used to attack "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" in a pleading.  FED. R. CIV. P. 12(f).  Such motions are viewed with disfavor and are rarely granted.  5C CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE  § 1380 (3d. ed.).  Nutrition Depot has made no showing sufficient to

13

entitled to recover attorney's fees under the Carmack Amendment.  (Docket Entry Nos. 23-24).

Nutrition Depot responded, attaching a new affidavit claiming at least $75,375 and as much as

$80,775 in attorney's fees.  (Docket Entry No. 26 & Ex. A).  DHL replied.  (Docket Entry No. 27).

Each of these motions is addressed below.

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the

burden of identifying those portions of the record it believes demonstrate the absence of a genuine

issue of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial

burden by "'showing' – that is, pointing out to the district court – that there is an absence of

evidence to support the nonmoving party's case."  *See Celotex*, 477 U.S. at 325.  While the party

moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it

does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402

F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one

party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State

of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet

[its] initial burden, the motion [for summary judgment] must be denied, regardless of the

nonmovant's response."  *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir.

2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

---

satisfy Rule 12(f).  To the extent Nutrition Depot argues that it should be entitled to default judgment on the conversion and Theft Liability Act claims because DHL's answer to those claims was untimely, that argument is rejected.  Nutrition Depot has not obtained a default or moved for default judgment.

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir.  2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial.  *Fontenot v. Upjohn Co.* , 780 F.2d 1190, 1194 (5th Cir. 1986).  "Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."  *Id.*; *see also Meecorp Capital Markets LLC v. Tex-Wave Industries LP*, 265 Fed. App'x 155, 157 (5th Cir. 2008) (per curiam) (unpublished) (quoting *Fontenot*).

## III.   Analysis

Two primary issues are implicated in deciding the summary judgment motions.  One is whether the limitation of liability provisions of the parties' contract are enforceable under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706.  The second is whether the Carmack Amendment preempts Nutrition Depot's state-law causes of action, including the claim for attorney's fees.

### A.    The Limitation of Liability Provisions

15

Nutrition Depot's Second Amended Complaint contains a section entitled "Liability Under the Carmack Amendment." (Docket Entry No. 15 at 6). Nutrition Depot alleges that "[t]he Carmack Amendment specifically voids any limitation of liability, and failing to meet any exception, Defendant's Policy is void." (*Id.*, ¶ 18). The breach of contract claim references the Carmack Amendment. (*Id.*, ¶ 32). Nutrition Depot also stated in its summary judgment briefing that its "claims fall within the scope of the Carmack Amendment." (Docket Entry No. 21-2 at 3).

The Carmack Amendment provides that, as a general rule, a motor carrier transporting property will be liable "for the actual loss or injury to the property." 49 U.S.C. § 14706(a)(1).[4] It also creates a "shipper waiver" exception, which allows motor carriers to:

> establish rates for the transportation of property (other than household goods described in section 13102(10)(A)) under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation.

49 U.S.C. § 14706(c)(1)(A). "A carrier may limit its liability if the carrier: (1) maintains a tariff within the prescribed guidelines of the Interstate Commerce Commission (now the Surface Transportation Board); (2) obtains the shipper's agreement as to her choice of liability; (3) gives the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issues

---

[4] To prevail on a Carmack Amendment claim, a shipper must establish a prima facie case of negligence by demonstrating: (1) delivery of the goods in good condition; (2) receipt by the consignee of less goods or damaged goods; and (3) the amount of damages. *Man-Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 479 (5th Cir. 2006); *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003); *Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 877 (5th Cir. 1996); *Johnson & Johnson v. Chief Freight Lines Co.*, 679 F.2d 421, 421 (5th Cir. 1982). If the shipper establishes a prima facie case, there is a rebuttable presumption of negligence. *Man-Roland*, 438 F.3d at 479. The carrier can overcome this presumption by showing that it was free from negligence and that the damage was due to the inherent nature of the goods or attributable to an act of God, public enemy, the shipper, or public authority. *Id.*, *Mo. Pac. R.R. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S.Ct. 1142 (1964). In this case, DHL does not dispute that it was negligent. It paid Nutrition Depot $100 per claim to settle the claims. The issue is whether the $100 liability limit violated the Carmack Amendment.

a receipt or bill of lading prior to moving the shipment." *Hoskins v. Bekins Van Lines*, 343 F.3d 769,

778 (5th Cir. 2003) (citing *Rohner Gehrig Co. v. Tri-State Motor Transit*, 950 F.2d 1079, 1081 (5th

Cir. 1992) (en banc)).[5]

> The undisputed facts in the record shows that the first requirement is satisfied as a matter of

law.  DHL maintains a ground tariff that was clearly posted on the internet site.  Nutrition Depot

included the ground tariff in its summary judgment evidence.  (Docket Entry No. 19, Ex. 11).

> The second element is that Nutrition Depot agreed to the liability level selected and the third

element is that Nutrition Depot had a reasonable opportunity to select between two or more levels

of liability.  *See Rohner Gehrig*, 950 F.2d at 1083 ("The choice of liability is inextricably

intertwined with a reasonable opportunity to choose, so the focal point of our inquiry Tri-State's [bill

of lading] gave Rohner 'a reasonable opportunity to choose between two or more levels of

liability.'").  "A shipper has a reasonable opportunity to choose among two levels of liability when

she has 'both reasonable notice of the liability limitation and the opportunity to obtain information

necessary to making a deliberate and well-informed choice."  *Hoskins*, 343 F.3d at 779 (quoting

*Hughes v. United Van Lines*, 829 F.2d 1407, 1419 (7th Cir. 1987)).

> The record is clear that Nutrition Depot agreed to the $100 limit of liability after being

afforded a reasonable opportunity to select alternate levels of liability.  The Terms and Conditions

of Carriage, the Terms and Conditions of Service, the COD Service Conditions, and the Ground

Tariff  all clearly state that DHL's liability with respect to a shipment is limited to $100 unless the

shipper requested and paid for Shipment Value Protection.  Requesting and paying for Shipment

Value Protection would have required DHL to pay the full stated COD amount rather than $100 for

---

[5]  The second requirement was modified in the ICC Termination Act of 1995, 49 U.S.C. § 702,  when
Congress abolished the Interstate Commerce Commission, replacing it with the Surface Transportation Board.
*Gulf Rice Arkansas, LLC v. Union Pacific R.R. Co.*, 376 F.Supp.2d 715, 721-22 (S.D. Tex. 2005).

each shipment for which Nutrition Depot did not receive the COD amount.   It is undisputed that although Nutrition Depot paid for the COD service, it did not check the box on the waybill to request Shipment Value Protection, did not state a value higher than $100 per shipment, and did not pay for the additional protection.

Nutrition Depot appears to dispute that it agreed to limit DHL's liability for unreturned COD funds.  DHL responds by pointing to the COD Service Conditions, which provide that "DHL's limit of liability is for the COD amount up to a maximum of $100 per shipment (unless Shipment Value Protection is marked)."  (Docket Entry No. 15, Ex. 1 at 7).  Both parties agree that the COD Service Conditions were part of the contract of carriage for each shipment.  Nutrition Depot attached them to its original petition, its First Amended Complaint, Second Amended Complaint, and its summary judgment motion as part of the parties' "valid and enforceable written contract."  (Docket Entry Nos. 1-3, ¶ 6; 6, ¶ 6; 15, ¶ 6; 19-2, ¶¶ 17, 18, 24).  The COD Service Conditions govern Nutrition Depot's shipments.[6]  Under the COD Service Conditions and the other Terms and Conditions, DHL's liability for missing COD funds is limited to $100 per shipment unless the shipper requested and paid for Shipment Value Protection.  DHL's online waybill form has a box that shippers may check to select Shipment Value Protection in an amount they choose.  Nutrition Depot did not purchase Shipment Value Protection when completing the online waybills.  The online form gave Nutrition Depot a reasonable opportunity to select the level of liability.  By leaving the form blank, Nutrition Depot agreed to limit DHL's liability to $100.  Both the second and third elements of the liability-limit test are satisfied.

---

[6]   Although the online terms that DHL requires shippers to agree to when creating an online account do not include the COD Service Conditions, the document is posted on the "terms and conditions" section of DHL's website.

18

Fifth Circuit precedent supports this conclusion.  In *Rohner Gehrig*, the Fifth Circuit, sitting

en banc, upheld the district court's grant of summary judgment for the plaintiff.  *Rohner Gehrig*, 950

F.2d at 1084-85.  The carrier presented the shipper with a standard-form bill of lading, which one

of the shipper's employees signed.  The document included the following statement: "Unless a

Greater Value is Declared, the Shipper Hereby Releases the Value to $5,000.00 Per Ton of 2,000

Pounds of Each Article."  *Id.* at 1081.  That text was not set off by bold or italicized type or

underlining, or in a separate box.  The document had no place to mark a level of liability or declare

a value of the shipment.  *Id.*  at 1082.  Applying the four-element test, the court concluded that:

> in a routine shipping case such as the one before us – a "one shot"
> transaction in which a carrier with properly posted tariffs presents
> one of its standard, printed B.O.L.s to a shipper who merely "signs
> on the dotted line" – the carrier fails the second and third prongs of
> the [] test: The shipper has not been given a *reasonable* opportunity
> to choose between two or more levels of liability, so it follows that
> any agreement purportedly obtained from the shipper as to its choice
> of liability when its agent signs the B.O.L. is worthless.

*Id.* at 1084 (emphasis original).

The facts of this case are different because none of Nutrition Depot's shipments was a "one-

shot deal."  Nutrition Depot shipped packages with DHL repeatedly and there were background

terms and conditions that Nutrition Depot agreed to governing each shipment.  The waybills

Nutrition Depot completed included a separate box that Nutrition Depot could check to request

Shipment Value Protection.  There was also a space to fill in any value Nutrition Depot deemed

appropriate.  Nutrition Depot was not asked simply to sign on the dotted line.  *See Rohner Gehrig*,

950 F.2d at 1084; *see also Hoskins,* 343 F.3d at 778-79 (finding that plaintiff had opportunity to

choose and that she agreed to limit when she agreed to a $50,000 liability limit and later changed

the limit to $70,000); *cf. Audio Visual Services Corp. v. Felter Int'l, Inc.*, 2006 WL 2382285 (S.D.

19

Tex. Aug. 16, 2006) (denying cross-motions for summary judgment because liability limit was not provided by contract and rejecting carrier's argument that an "industry standard" limit applied because it was unclear if the shipper had notice of that limit).

The fourth requirement is not strict. In *Hoskins*, the Fifth Circuit found that an "Interstate Order for Service," which included the terms of the contract of carriage, constituted a pre-shipment "receipt." *Hoskins*, 343 F.3d 779-80; *see also Toppan Photomasks, Inc. v. N. Am. Van Lines, Inc.*, 2007 WL 173904, at *2 (S.D. Tex. Jan. 19, 2007) ("The shipper's acceptance of the terms of the bill of lading controls, regardless of whether the carrier issued the actual bill of lading after transport. The relevant inquiry is whether the shipper manifested assent to the salient terms of the bill of lading before the shipment commenced." (internal citation omitted)). Here, there is no dispute that Nutrition Depot accepted DHL's Terms and Conditions. Nutrition Depot also created waybills online for each shipment. The waybills in the record include the essential contract terms, such as the weight, the shipping cost, and the recipient's address. The waybill qualifies as a "receipt," satisfying the fourth element of the limitation-of-liability validity test.

All four elements required for a valid limit of liability under the Carmack Amendment have been satisfied. DHL maintains a tariff, gave Nutrition Depot a reasonable opportunity to choose a level of liability, obtained Nutrition Depot's agreement to a $100 limit, and issued a bill of lading. As a matter of law, the $100 limit was valid under the Carmack Amendment. To the extent Nutrition Depot seeks summary judgment that the limitation of liability provision is unenforceable, its motion is denied. To the extent DHL seeks summary judgment that the limitation of liability provision is enforceable, its motion is granted.

### B.    Preemption of the State-Law Claims

Nutrition Depot seeks summary judgment that it is entitled to recover on its state-law claims for breach of fiduciary duty, breach of contract, conversion, and theft of property.  DHL seeks summary judgment that there is no right to recover under these claims and has moved for a partial summary judgment that Nutrition Depot is not entitled to attorney's fees.  These motions depend on whether the Carmack Amendment – which the parties agree applies –  preempts the state-law claims.  DHL argues that the law is clear that state-law claims arising from DHL's alleged failure to pick up and/or return COD checks are expressly preempted by the Carmack Amendment.  (Docket Entry No. 25 at 6).  Nutrition Depot argues that the Carmack Amendment applies and that this court has federal jurisdiction over these claims; that DHL is liable under the Carmack Amendment for failing to remit the COD payments; and that the "Carmack Amendment is not intended to condone breach of fiduciary duty, breach of contract, conversion, or thievery."  (Docket Entry No. 21-2 at 4).

The Fifth Circuit has held that "Congress intended for the Carmack Amendment to provide *the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier*."  *Hoskins*, 343 F.3d at 778 (emphasis in original).  The court reached that conclusion in determining that the "complete preemption"doctrine applied to such claims, creating federal-question jurisdiction over them for removal purposes.  The nondiverse defendant was allowed to remove even though the plaintiff had pleaded only state common-law negligence and breach of contract claims and a Texas Deceptive Trade Practices Act claim.  *Id.*  The court emphasized that any claim relating to the loss or damage of goods arising from interstate shipment by a common carrier "only arises under federal law."  *Id.* (quoting *Beneficial National Bank v. Anderson*, 539 US 1, 123 S.Ct. 2058, 2064 (2003)) (alteration removed).

Nutrition Depot's argument that the Carmack Amendment provides federal jurisdiction and a basis for liability against DHL but does not preempt state-law claims is unpersuasive.  The

Supreme Court has explained that the complete preemption analysis "focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended the cause of action be removable," *Beneficial*, 539 U.S. at 9, n. 5.  *Hoskins* applied that analysis.  The Supreme Court and Fifth Circuit cases relied on in *Hoskins* demonstrate that the Carmack Amendment was intended to have a broad preemptive effect.

Soon after the Carmack Amendment was passed in 1906, the Supreme Court held that the Amendment had substantially changed the character of carrier liability on interstate shipment contracts.  Of such shipping, the Court wrote:

> [T]his branch of interstate commerce was being subjected to such a diversity of legislative and judicial holding that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own state, or a carrier whose lines were extensive, to know, without considerable investigation and trouble, and even then oftentimes but with little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one state to another.  The [Carmack Amendment] has made an end to this diversity, for the national law is paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transactions. . . .
>
> That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character.  It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract.  Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.

*Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S. Ct. 148, 151-52 (1913).  The following year, the Court explained that "the special regulations and polices of particular States upon the subject of the carrier's liability for loss or damage to interstate shipments, and the contracts of carriers with

respect thereto have been superseded." *Missouri, Kansas & Texas Ry. Co. of Texas v. Harris*, 234 U.S. 412, 420, 24 S. Ct. 790 (1914).

In other early cases, the Supreme Court reaffirmed that holding. *See, e.g., Kansas City S. Ry. Co. v. Carl*, 227 U.S. 639, 649, 33 S. Ct. 391 (1913) ("That amendment undoubtedly manifested the purpose of Congress to bring contracts for interstate shipments under on uniform rule or law, and therefore withdraw them from the influence of state regulation."); *Boston & Maine R.R. v. Hooker*, 233 U.S. 97, 110, 34 S. Ct. 526 (1914) ("the subject of interstate transportation of property has been regulated by Federal law to the exclusion of the power of the states to control in such respect by their own policy or legislation."); *Charleston & W. Carolina Ry. Co. v. Varnville Furniture Co.*, 237 U.S. 597, 603, 35 S. Ct. 715 (1915) (quoting *Harris*, 234 U.S. at 420); *New York, Philadelphia, & Norfolk R. R. Co. v. Peninsula Produce Exch. of Maryland*, 240 U.S. 34, 38, 36 S. Ct. 230 (1916) (quoting *Croninger*, 226 U.S. at 506). More recently, the Court stated that "[w]ith the enactment in 1906 of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss." *New York, New Haven & Hartford R.R. Co. v. Nothnagle*, 346 U.S. 128, 131, 73 S. Ct. 986 (1953); *cf. Hughes v. United Van Lines, Inc.*, 485 U.S. 913, 108 S. Ct 1068 (1988) (White J., dissenting from denial of *certiorari*) (noting that the Tenth Circuit had taken the position that the Carmack Amendment did not preempt all other remedies, while the Fifth, Sixth, Seventh, and Eighth Circuits had found all claims to be preempted; In *Underwriters at Lloyds of London v. N. American Van Lines*, 890 F.2d 1112, 1121 (10th Cir. 1989), the Tenth Circuit overruled its previous precedents and adopted the broad view of the other circuits).

The Fifth Circuit has more recently emphasized the Supreme Court's early interpretations of the Carmack Amendment. In *Air Products & Chemicals, Inc. v. Ill. Central Gulf R.R. Co.*, 721

F.2d 483, 484-485 (5th Cir. 1983), the court stated that "the Carmack Amendment, as judicially interpreted, provides an exclusive remedy for a breach of a contract of carriage provided by a bill of lading, and that this remedy includes foreseeable damages resulting from misdelivery of different cargo than that specified by the bill of lading."   The court noted that "Congress intended by the Carmack Amendment to provide a uniform national remedy against carriers for breach of the contract of carriage, including a liability for default in any common-law duty as a common carrier." *Id.* at 487.   Ten years later, recognizing that the purpose of the Carmack Amendment was "to create uniformity out of disparity," the Fifth Circuit held that the Carmack Amendment preempted all the plaintiff's claims arising out of the carrier's failure to ship goods by a certain date.   The preempted claims were (1) the tort of outrage, (2) intentional infliction of emotional distress, (3) negligent infliction of emotional distress, (4) breach of contract, (5) breach of implied warranty, (6) breach of express warranty, (7) violation of the Texas Deceptive Trade Practices Act, (8) slander, (9) misrepresentation, (10) fraud, (11) negligence and gross negligence, and (12) violation of common carrier duties under state law.   *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 306-07 (5th Cir. 1993). In another case, the court held that the Carmack Amendment also preempts federal common-law remedies.   *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 379 (5th Cir. 1998).   The court stated: "In actions seeking damages for the loss of property shipped in interstate commerce by a common carrier under a receipt or bill of lading, the Carmack Amendment is the shipper's sole remedy."   *Id.* at 382.   This line of cases led to the conclusion in *Hoskins* that the Carmack Amendment provided the exclusive remedy for loss or damage to goods in interstate shipping. *Hoskins*, 343 F.3d at 776-78; *see also New Process Steel Co. v. Union Pacific R. Co.*, 91 Fed. App'x 895, 897-98 (5th Cir. 2003) (per curiam) (unpublished) (reaffirming and relying on the *Hoskins* analysis of Carmack Amendment preemption).

24

This case does not involve loss or damage to goods shipped, but instead the carrier's alleged failure to remit COD payments for goods that were properly delivered.  But the preemptive effect of the Carmack Amendment is not limited, as Nutrition Depot appears to argue.  *See Peninsula Produce*, 240 U.S. at 38 ("The words [in the Carmack Amendment] are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination."); *see also Moffit*, 6 F.3d at 305-08 (finding claims for late delivery preempted); *Morris*, 144 F.3d at 379 (finding claims preempted when most of plaintiffs' belongings destroyed in moving-truck fire).

At least one court has held that Carmack Amendment preemption embraces claims for missing COD money.  *See Circle Redmont, Inc. v. Mercer Transp. Co.*, 795 So.2d 239, 241 (Fla. Dist. Ct. App. 2001).  In *Circle Redmont*, the shipper – a maker of custom glass – and the carrier entered into a contract for shipment of glass from Florida to New York.  The shipper prepared the bill of lading, which stated that the goods were being sent COD.  The carrier delivered the goods but the driver failed to collect the COD payment.  The shipper sued, alleging state-law claims for conversion and breach of contract.  *Id* at 240-41.  After a bench trial, the trial court found that "the Carmack Amendment provided the exclusive remedy for Circle's claim of losses because the claim arose out of an interstate shipment of goods under a bill of lading." *Id.* at 241.  The shipper appealed the preemption holding with respect to the contract breach claim but not the conversion claim.  *Id.* at 242 & n.2.  Relying on the same Supreme Court cases supporting the *Hoskins* decision, the appellate court affirmed, finding that "the United States Supreme Court has interpreted the scope of the Carmack Amendment's preemption so broadly that such claims [for COD funds] necessarily

25

come within its scope." *Id.* at 242.[7]  The reasoning in *Circle Redmont* is persuasive.  The line of

Supreme Court cases beginning soon after the Amendment's passage, supplemented by more recent

Fifth Circuit cases, leads to the conclusion that claims arising from a carrier's failure to remit COD

payments due for delivered shipments are within the Carmack Amendment.  For such claims, the

Carmack Amendment provides the exclusive remedy because it covers "all damages resulting from

any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed

destination."  *Peninsula Produce*, 240 U.S. at 38.[8]

Nutrition Depot argues that *Richmond Capital Corp. v. Federal Express*, 211 F.3d 126, 2000

WL 310061 (5th Cir. 2000) (per curiam) (unpublished), requires this court to conclude that although

the Carmack Amendment applies to this case, it does not preempt the state-law claims.  In that case,

FedEx collected a "teller's check," which turned out to be fraudulent, rather than a cashier's check,

as the contract required it to do.  Because FedEx failed to comply with its contractual obligations,

---

[7]  Another line of cases holds that a carrier is not liable for accepting what appears to be a valid check but later turns out to be fraudulent.  The carrier can be held liable if the driver collects the wrong form of payment, such as a personal check when the bill of landing mandated a cashier's check, or the driver collects a fraudulent check that does not appear valid on its face.  *See, e.g., Bryant v. United Parcel Service of Am.*, 2006 WL 2521613 (D.S.C. Aug. 30, 2006); *Comark, Inc v. United Parcel Service, Inc.*, 701 F.Supp.641 (N.D. Ill. 1988).  Two such cases, cited by DHL and the *Circle Redmont* court, reached those holdings after determining that the Carmack Amendment applied to C.O.D. collection issues.  *Am. Eye Way, Inc. v. Roadway Package System, Inc.*, 875 F.Supp. 820 (S.D. Fla. 1995); *United Parcel Service v. S.C. Tees, Inc.*, 333 S.C. 178 (S.C. Ct. App. 1998).

[8]  This case is distinguishable from *Mayflower Transit, Inc. v. Weil, Gotshal, & Manges, L.L.P.*, 2000 WL 34479959 (N.D. Tex. 2000), which Nutrition Depot cites in its attorney's fees response brief.  In that case, the shipper refused to pay, allegedly because Mayflower employees took valuable jewelry from the shipper's home, and Mayflower sued to enforce the contract.  The court found that the shipper's counterclaims for fraud, negligent misrepresentation, breach of contract, and violation of the Texas Deceptive Trade Practices Act were all preempted by the Carmack Amendment.  It allowed the shipper go forward, however, on state-law claims for conversion and negligent supervision of employees related to the conversion because they were " 'separate and apart from those resulting directly from the loss of shipped property.' "  *Id.* at 4 (quoting *Morris*, 144 F.3d at 382).  The conversion-related claims were not preempted because the jewelry was not even part of the intended shipment of goods; the movers allegedly took it from drawers while packing.  *Id.* The goods lost were not covered by the bill of lading.  Here, the COD funds were provided for on the bill of lading, making Nutrition Depot's claims a direct result of the loss of shipped property.

the Fifth Circuit upheld summary judgment for the shipper on a breach of contract claim. *Id.* at 2-3.

That case is not relevant because it involved a shipment by air, which is outside the Carmack

Amendment and its preemptive effect. *Richmond Capital* addressed the merits of the shipper's state-

law contract claim, which the Carmack Amendment prevents this court from reaching.  DHL is

entitled to summary judgment on the state-law claims.

The Carmack Amendment also bars Nutrition Depot's recovery of attorney's fees.  The

parties agree that attorney's fees are not available in Carmack Amendment suits.  And, for the

reasons already discussed, the Carmack Amendment preempts any state law claim under which such

fees might otherwise be recoverable.  *Royal Air, Inc. v. AAA Cooper Transportation, Inc.*, 395

F.Supp.2d 436, 441 (W.D. La. 2005) ("Royal Air's claim for reasonable attorney's fees in the instant

action fails, as the claim for attorney's fees is completely pre-empted by the Carmack

Amendment.").[9]  Even if attorney's fees were available under any of Nutrition Depot's claims,

Nutrition Depot has not prevailed on any such claim.  DHL's motion for partial summary judgment

on the attorney's fees claim is granted.

## IV.    Conclusion

This court denies Nutrition Depot's motion for summary judgment and grants both of DHL's

motions for summary judgment.  Nutrition Depot's motion to strike is denied and its discovery

---

[9] In its summary judgment motion, Nutrition Depot also asserted objections to a number of DHL's discovery responses.  Most of Nutrition Depot's arguments go to contest the weight or factual accuracy of DHL's discovery responses.  Those are not proper discovery objections. They are evidentiary arguments this court has taken into account in weighing the summary judgment evidence.  Similarly, Nutrition Depot's argument that DHL has not provided evidence of its own to counter the plaintiff's evidence, goes to the merits of the summary judgment motion.  Nutrition Depot's only true discovery objection seems to be that DHL did not sufficiently search its records to find information and documents responsive to the discovery requests.  DHL has since added additional waybills, the online version of the Terms and Conditions agreement, and Dana Edwards's declaration to the record.  In any event, because DHL is entitled to full summary judgment, Nutrition Depot's objections are overruled as moot.

objections are overruled.  Although this court has concluded that DHL's liability is limited to $100

per shipment, the record does not permit this court to conclude that DHL has paid $100 for every

shipment for which it allegedly failed to remit the COD funds to Nutrition Depot and wishes to

resolve the claim.  A status conference is set for **December 15, 2009, at 8:30 a.m.** to discuss the

resolution of this claim.

SIGNED on December 3, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

28